530 F.2d 247
 12 Fair Empl.Prac.Cas. 208,
11 Empl. Prac. Dec. P 10,630
John F. SINGER, and other persons similarly situated,
Plaintiff-Appellant,
v.
UNITED STATES CIVIL SERVICE COMMISSION et al., Defendants-Appellees.
 No. 74--2073.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 12, 1976.
 
 1
 Lawrence F. Baker (argued), Seattle, Wash., for plaintiff-appellant.
 
 
 2
 Charles Mansfield, Asst. U.S. Atty. (argued), Seattle, Wash., for defendants-appellees.
 
 OPINION
 
 3
 Before CHAMBERS and KENNEDY, Circuit Judges, and JAMESON,* District Judge.
 
 JAMESON, District Judge:
 
 4
 This is an appeal from a summary judgment of dismissal of an action brought by John F. Singer, plaintiff-appellant, against the United States Civil Service Commission and certain of its officials, defendants-appellees, seeking declaratory and injunctive relief and damages for termination of Singer's employment because of his homosexual conduct. The district court held that there was 'substantial evidence in the administrative record to support the findings and conclusions' of the Civil Service Commission. Both sides rely upon excerpts from that record, and particularly statements of the Commission and its officials. Accordingly we set forth the record in some detail.
 
 Factual Background
 
 5
 On August 2, 1971, Singer was hired by the Seattle Office of the Equal Employment Opportunity Commission (EEOC) as a clerk typist. Pursuant to 5 C.F.R. § 315.801 et seq., he was employed for one year on probationary status, subject to termination if 'his work performance or conduct during this period (failed) to demonstrate his fitness or his qualifications for continued employment' (§ 315.804).[1] At the time he was hired Singer informed the Director of EEOC that he was a homosexual.
 
 
 6
 On May 12, 1972, an investigator for the Civil Service Commission sent a letter to Singer inviting him 'to appear voluntarily for an interview to comment upon, explain or rebut adverse information which has come to the attention of the Commission' as a result of its investigation to determine Singer's 'suitability for employment in the competitive Federal service.' The interview was set for May 19. Singer appeared at the appointed time with his counsel. Singer was advised that the investigation by the Commission disclosed that 'you are homosexual. You openly profess that you are homosexual and you have received wide-spread publicity in this respect in at least two states.' Specific acts were noted, which may be summarized as follows:
 
 
 7
 (1) During Singer's previous employment with a San Francisco mortgage firm Singer had 'flaunted' his homosexuality by kissing and embracing a male in front of the elevator in the building where he was employed and kissing a male in the company cafeteria;
 
 
 8
 (2) The San Francisco Chronicle wrote an article on Singer in November of 1970 in which he stated his name and occupation and views on 'closet queens';
 
 
 9
 (3) At the Seattle EEOC office Singer openly admitted being 'gay' and indicated by his dress and demeanor that he intended to continue homosexual activity as a 'way of life';
 
 
 10
 (4) On September 20, 1971, Singer and another man applied to the King County Auditor for a marriage license, which was eventually refused by the King County Superior Court;[2]
 
 
 11
 (5) As a result of the attempt to obtain the marriage license Singer was the subject of extensive television, newspaper and magazine publicity;
 
 
 12
 (6) Articles published in the Seattle papers of September 21, 1971 included Singer's identification as a typist employed by EEOC and quoted Singer as saying, in part, that he and the man he sought to marry were 'two human beings who happen to be in love and want to get married for various reasons';
 
 
 13
 (7) Singer was active as an 'organizer, leader and member of the Board of Directors of the Seattle Gay Alliance, Inc.'; his name accompanied by (his) 'place of employment appeared as one of the individuals involved in the planning and conducting of a symposium presented by the Seattle Gay Community'; he appeared in a radio 'talk show' and displayed homosexual advertisements on the windows of his automobile;
 
 
 14
 (8) Singer sent a letter to the Civil Service Commission about a planned symposium on employment discrimination stating in part, 'I work for the E.E.O.C., and am openly Gay . . ..'
 
 
 15
 Singer was offered an opportunity to comment 'regarding these matters'. He did not do so. On May 22 his counsel by letter requested a citation to the Civil Service regulations under which the investigation was proceeding and any regulation related to his alleged unsuitability for employment. In a response dated May 23 the Commission stated that its authority was found in Rule 5, Section 5.2 of the Civil Service Rules and Regulations; and that the 'suitability standards in Section 731.201 of the Commission's regulations' cite as disqualifying factors: 'Criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct'.
 
 
 16
 Singer and his counsel were given a further opportunity to appear on Wednesday, May 24, to make a statement or give further information. Instead an affidavit was presented dated May 26 in which Singer stated that (1) he had read the investigative report; (2) the identification of his employment as a typist for the EEOC (6 above) was done by the newspaper without his 'specific authorization'; (3) the use of his place of employment with respect to the symposium (7 above) was 'not specifically authorized' by him and 'was done without (his) knowledge or consent'; and (4) he saw nothing in the report 'which in any way indicates that my conduct has been in violation of regulations pertaining to federal employees'.
 
 
 17
 By letter dated June 26, 1972 the Chief of the Investigations Division of the Seattle office of the Civil Service Commission notified Singer that by reason of his 'immoral and notoriously disgraceful conduct' he was disqualified under Section 731.201(b) of the Civil Service Regulations (5 CFR § 731.201(b)) and that his agency had been directed to separate him from the service.[3]
 
 
 18
 Singer appealed the decision. Following the submission of briefs, the Hearing Examiner, on September 14, 1972 upheld the decision of the Chief of the Investigations Division. In advising Singer that instructions for his removal were being renewed, the Examiner reviewed the virtually unrefuted charges against Singer and continued in part:
 
 
 19
 'In reaching a decision on your appeal, careful consideration has been given to the written representations and evidence submitted in your behalf by Attorney Christopher E. Young on September 7, 1972, in lieu of an opportunity for personal appearance afforded to you on that date. In pertinent part, these representations contend that your supervisor and co-workers have experienced no complaint with your performance or conduct on the job,[4] and that your removal will not promote the efficiency of the service. The appellate representations otherwise disagree with the Commission's determination that homosexual conduct is immoral in nature and does not meet requirements of suitability for the Federal service, contending that such actions based on an individual's personal sexuality and sexual activities are violative of constitutional rights of privacy and free speech.
 
 
 20
 'However, there is more to the 'efficiency of the service' than the proper performance of assigned duties. The immoral and notoriously disgraceful conduct which is established by the evidence in your case, in our view, does have a direct and material bearing upon your fitness for Federal employment. Activities of the type you have engaged in, which has not been limited to activity conducted in private, are such that general public knowledge thereof would reflect discredit upon the Federal government as your employer, impeding the efficiency of the service by lessening general public confidence in the fitness of the government to conduct the public business with which it is entrusted. The federal government, like any employer, may be judged by the character and conduct of the persons in its employ, and it will promote the efficiency of the service to remove from its employ any individual whose detrimental influence will detract from that efficiency.'
 
 
 21
 Singer appealed to the United States Civil Service Commission, Board of Appeals and Review. In a decision and order dated December 1, 1972 the Board affirmed the decision of the Regional Office dated September 14, 1972 saying in part:
 
 
 22
 'There is evidence in the file which indicated that appellant's actions establish that he has engaged in immoral and notoriously disgraceful conduct, openly and publicly flaunting his homosexual way of life and indicating further continuance of such activities. Activities of the type he has engaged in are such that general public knowledge thereof reflects discredit upon the Federal Government as his employer, impeding the efficiency of the service by lessening general public confidence in the fitness of the Government to conduct the public business with which it is entrusted.'
 
 
 23
 On December 29, 1972 Singer filed this action on behalf of himself and other persons similarly situated, seeking injunctive and declaratory relief. The complaint was later amended to include a prayer for damages and an order restoring Singer to his Civil Service position. Summary judgment of dismissal with prejudice was entered on March 29, 1974.
 
 Contentions of Parties
 
 24
 Appellant contends that he was discharged because of his status as a homosexual without the Commission showing any 'rational nexus' between his homosexual activities and the efficiency of the service, in violation of the Due Process Clause of the Fifth Amendment; and that he has been denied freedom of expression and the right to petition the Government for redress of grievances, in violation of the First Amendment. The Commission argues that appellant's discharge as a probationary employee was not arbitrary, capricious, an abuse of discretion, or unconstitutional; that appellant was not discharged because of his status as a homosexual; and that appellant's repeated flaunting and advocacy of a controversial lifestyle, with substantial publicity in which he was identified as an employee of EEOC, provided a rational basis for the Commission's conclusion as to 'possible embarrassment to, and loss of public confidence in (the) agency and the Federal Civil Service'.
 
 
 25
 In considering these contentions, we are concerned with recent developments of the law in four related areas: (1) the extent of judicial review of agency decisions; (2) the extent of the Government's prerogative to regulate the conduct of its employees; (3) the constitutional rights of probationary employees; and (4) the dismissal of government employees for homosexual activities.
 
 Scope of Review of Agency Action
 
 26
 While the concept of the scope of review of agency action in the discharge of government employees has broadened in recent years, it is still narrow. Dennis v. Blount, 497 F.2d 1305, 1309 (9 Cir. 1974). The applicable rule was well summarized in Toohey v. Nitze, 429 F.2d 1332, 1334 (9th Cir. 1970):
 
 
 27
 'Dismissal from federal employment is largely a matter of executive agency discretion. Particularly is this true during the probationary period. The scope of judicial review is narrow. Assuming that statutory procedures meet constitutional requirements, the court is limited to a determination of whether the agency substantially complied with its statutory and regulatory procedures, whether its factual determinations were supported by substantial evidence, and whether its action was arbitrary, capricious or an abuse of discretion.'[5]
 
 
 28
 Right of Government to Control Conduct and Speech of Employees
 
 
 29
 As with scope of review of action of government agencies, courts are 'increasingly re-examining and considering . . . to what extent the Government's prerogative to employ or discharge permits it to regulate conduct of its employees' which might otherwise violate constitutional rights. Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822, 832 (1968).[6] It is well established, however, that the Government as an employer has interests in regulating the speech of its employees 'that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general'. The problem is to arrive at the proper balance between the interests of the employee, as a citizen, and the interest of the Government, as an employer, 'in promoting the efficiency of the public service it performs through its employees'. Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968).
 
 Status of Probationary Employee
 
 30
 As a probationary employee appellant had no right per se to continued employment.[7] However, even though a person has no 'right' to a valuable governmental benefit and 'even though the government may deny him the benefit for any number of reasons', it 'may not deny a benefit to a person on a basis that infringes his constitutionally protected interests--especially his interest in freedom of speech.' Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2697, 33 L.Ed.2d 570 (1972). Moreover, while the Civil Service Commission has wide discretion in determining what reasons may justify removal of federal employees, that discretion is not unlimited. Due process limitations in determining what reasons justify removal may apply to those whose employment is not protected by statute.
 
 
 31
 It is clear that the Civil Service Commission complied with the statutory and regulatory procedures in its investigation of appellant's conduct and in his dismissal. It is clear also that the dismissal was not based upon unfounded and unsupported charges. Appellant in effect admitted the truth of the charges.[8] The sole question is whether the action of the Commission in dismissing appellant on the basis of the admitted charges was arbitrary and capricious, an abuse of discretion, and in violation of appellant's constitutional rights.
 
 Dismissal for Homosexual Activities
 
 32
 With the foregoing principles and trends in mind, we turn to those cases which have considered homosexual activities as a basis for dismissal of Civil Service employees. The leading case is Norton v. Macy, 135 U.S.App.D.C. 214, 417 F.2d 1161 (1969) (opinion by Judge Bazelon, with Judge Wright concurring and Judge Tamm dissenting), where a protected civil servant sought review of his discharge for 'immoral conduct' and for possessing personality traits which rendered him 'unsuitable for further Government employment'. The employee was 'competent' and doing 'very good' work. He was dismissed solely because he had made an off-duty homosexual advance. The Commission found that this act amounted to 'immoral, indecent, and disgraceful conduct', resulting in possible embarrassment to the employing agency. Relying on the First Amendment and the Due Process Clause the court held that the dismissal could not be sustained on the grounds relied on by the Commission, in that the employer agency had not demonstrated any 'rational basis' for its conclusion that discharge would 'promote the efficiency of the service'. The court noted, however, that homosexual conduct cannot be ignored as a factor in determining fitness for federal employment since it might 'bear on the efficiency of the service in a number of ways'. More specifically the court said: 'If an employee makes offensive overtures while on the job, or if his conduct is notorious, the reactions of other employees and of the public with whom he comes in contact in the performance of his official functions may be taken into account. Whether or not such potential consequences would justify removal, they are at least broadly relevant to 'the efficiency of the service." 417 F.2d at 1166.
 
 
 33
 The court concluded in Norton, 417 F.2d at 1167, that:
 
 
 34
 'A reviewing court must at least be able to discern some reasonably foreseeable, specific connection between an employee's potentially embarrassing conduct and the efficiency of the service. Once the connection is established, then it is for the agency and the Commission to decide whether it outweighs the loss to the service of a particular competent employee.
 
 
 35
 'In the instant case appellee has shown us no such specific connection. Indeed, on the record appellant is at most an extremely infrequent offender, who neither openly flaunts nor carelessly displays his unorthodox sexual conduct in public.[9] Thus, even the potential for the embarrassment the agency fears is minimal. We think the unparticularized and unsubstantiated conclusion that such possible embarrassment threatens the quality of the agency's performance is an arbitrary ground for dismissal.'
 
 
 36
 Norton v. Macy was construed by another panel of the Court of Appeals for the District of Columbia, in Gayer v. Schlessinger, 160 U.S.App.D.C. 172, 490 F.2d 740 (1973) in an opinion by Judge Fahy with Judge Leventhal concurring, and Judge Robb concurring in part and dissenting in part.[10] The court concluded regarding Norton 'Thus the court said (in part) that a rational connection between an employee's homosexual conduct and the efficiency of the service may exist' justifying agency personnel action. 490 F.2d at 750. The court noted (n. 21 p. 750) that judicial opinion on the issue was not unanimous since in Anonymous v. Macy, 398 F.2d 317, 318 (5 Cir. 1968) the court rejected the contention that homosexual acts of employees do not affect the efficiency of the service and may not be the basis of discharge.[11] The court in Gayer concluded that, 'As in other decisions of importance the bearing of particular conduct . . . must be left to a rational appraisal based on relevant facts'; that the determination of the government agency should be 'explained in such manner that a reviewing court may be able to discern whether there is a rational connection between the facts relied upon and the conclusions drawn'; that some deference must be accorded the decision of the agency; and that the 'degree of this deference must be the result of a nice but not--easily--definable weighing of the ingredients of which the particular case is comprised'. 490 F.2d at 750--751.
 
 
 37
 In Society for Individual Rights, Inc. v. Hampton, 63 F.R.D. 399 (N.D.Cal.1973), an organization of homosexual persons and a discharged employee brought an action to 'challenge the United States Civil Service Commission's policy as stated in Federal Personnel Manual Supplement (Int.) 731--71 of excluding from government employment all persons who have engaged in or solicited others to engage in homosexual acts'.[12] The court found that the decision of the Board of Appeals and Review was 'based solely upon the fact that plaintiff is presently a homosexual person and the Commission's view that the employment of such persons will bring the government service into 'public contempt". Following Norton v. Macy, the court held that the 'Commission can discharge a person for immoral behavior only if that behavior actually impairs the efficiency of the service', and that the Commission had not met, or even tried to meet, this standard. 63 F.R.D. at 401. The court accordingly ordered reinstatement of the discharged employee and that the Commission 'forthwith cease excluding or discharging from government service any homosexual person whom the Commission would deem unfit for government employment solely because the employment of such a person in the government service might bring that service into the type of public contempt which might reduce the government's ability to perform the public business with the essential respect and confidence of the citizens which it serves'. 63 F.R.D. at 402.
 
 
 38
 The court recognized, however, that 'granting this relief will not interfere with the power of the Commission to dismiss a person for homosexual conduct in those circumstances where more is involved than the Commission's unparticularized and unsubstantiated conclusion that possible embarrassment about an employee's homosexual conduct threatens the quality of the government's performance. Thus, although the overbroad rule stated in Federal Personnel Manual Supplement (Int.) 731--71 supra, n. 1, cannot be enforced, the Commission is free to consider what particular circumstances might justify dismissing an employee for charges relating to homosexual conduct.'[13] 63 F.R.D. at 401.
 
 
 39
 Changes in Civil Service Regulations and Personnel Manual
 
 
 40
 At oral argument counsel called attention to changes in the Personnel Manual following Society for Individual Rights v. Hampton, which were set forth in a bulletin issued December 21, 1973,[14] and also to amendments to the Civil Service Regulations relating to Suitability Disqualification, which became effective July 2, 1975[15] following rule making proceedings initiated on December 3, 1973. The bulletin issued on December 21, 1973 was not made a part of the record in this case, and it does not appear that it was called to the attention of the district court. The new regulations were adopted subsequent to the entry of judgment and during the pendency of this appeal. Our decision in this case is based on the record before the district court and the regulations and guidelines in effect when appellant's contract was terminated.[16]
 
 Reason for Termination of Employment
 
 41
 We conclude from a review of the record in its entirety that appellant's employment was not terminated because of his status as a homosexual or because of any private acts of sexual preference. The statements of the Commission's investigation division, hearing examiner, and Board of Appeals make it clear that the discharge was the result of appellant's 'openly and publicly flaunting his homosexual way of life and indicating further continuance of such activities', while identifying himself as a member of a federal agency. The Commission found that these activities were such that 'general public knowledge thereof reflects discredit upon the Federal Government as his employer, impeding the efficiency of the service by lessening public confidence in the fitness of the Government to conduct the public business with which it was entrusted'.
 
 
 42
 This case is factually distinguishable from Norton v. Macy and the other cases discussed supra, involving private sexual acts and considering situations where there was no showing that the discharge would 'promote the efficiency of the service'. It is apparent from their statements that the Commission and its officials appreciated the requirement of Norton v. Macy, decided three years earlier, that the discharge of a homosexual must be justified by a finding that his conduct affected the efficiency of the service. As noted supra, Norton v. Macy recognized that notorious conduct and open flaunting and careless display of unorthodox sexual conduct in public might be relevant to the efficiency of the service. The Commission set forth in detail the specified conduct upon which it relied in determining appellant's unsuitability for continued employment in the competitive Federal service. We are able to discern 'a rational connection between the facts relied upon and the conclusions drawn' (Gayer v. Schlessinger, supra) and agree with the district court that there was substantial evidence to support the findings and conclusions of the Civil Service Commission.
 
 First Amendment Rights
 
 43
 With respect to appellant's contention that his First Amendment rights have been violated, appellant relies on two cases which deserve comment. The first of these cases, Gay Students Org. of University of New Hampshire v. Bonner, 509 F.2d 652 (1 Cir. 1974), did not involve public employment, but rather the validity of a regulation prohibiting a homosexual organization from holding social activities on the campus. The court concluded that 'The GSO's efforts to organize the homosexual minority, 'educate' the public as to its plight, and obtain for it better treatment from individuals and from the government . . . represent but another example of the associational activity unequivocally singled out for protection in the very 'core' of association cases decided by the Supreme Court'.[17] In holding that 'conduct may have a communicative content sufficient to bring it within the ambit of the First Amendment', the Court also recognized that 'Communicative conduct is subject to regulation as to 'time, place and manner' in the furtherance of a substantial governmental interest, so long as the restrictions imposed are only so broad as required in order to further the interest and are unrelated to the content and subject matter of the message communicated.' 509 F.2d at 660.
 
 
 44
 In Acanfora v. Board of Education of Montgomery County, 491 F.2d 498 (4 Cir. 1974), the Board had transferred Acanfora to a nonteaching position when they found that he was a homosexual. The Board's action was upheld on the ground that Acanfora had deliberately withheld from his application information relating to his homosexuality. In holding, however, that Acanfora's public statements on homosexuality were protected by the First Amendment, the court recognized the balancing test set forth in Pickering v. Board of Education, supra, and continued:
 
 
 45
 'At the invitation of the Public Broadcasting System, Acanfora appeared with his parents on a program designed to help parents and homosexual children cope with the problems that confront them. Acanfora also consented to other television, radio, and press interviews. The transcripts of the television programs, which the district court found to be typical of all the interviews, disclose that he spoke about the difficulties homosexuals encounter, and, while he did not advocate homosexuality, he sought community acceptance. He also stressed that he had not, and would not, discuss his sexuality with the students.
 
 
 46
 'In short, the record discloses that press, radio and television commentators considered homosexuality in general, and Acanfora's plight in particular, to be a matter of public interest about which reasonable people could differ, and Acanfora responded to their inquiries in a rational manner. There is no evidence that the interviews disrupted the school, substantially impaired his capacity as a teacher, or gave the school officials reasonable grounds to forecast that these results would flow from what he said. We hold, therefore, that Acanfora's public statements were protected by the first amendment and that they do not justify either the action taken by the school system or the dismissal of his suit.' 491 F.2d at 500.
 
 
 47
 Bonner and Acanfora are factually distinguishable. Neither involved the open and public flaunting or advocacy of homosexual conduct. Applying the balancing test of Pickering v. Board of Education, the Commission could properly conclude that under the facts of this case, the interest of the Government as an employer 'in promoting the efficiency of the public service' outweighed the interest of its employee in exercising his First Amendment Rights through publicly flaunting and broadcasting his homosexual activities.
 
 
 48
 Affirmed.
 
 
 
 *
 Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation
 
 
 [1]
 § 315.804 provides for notice in writing as to why a probationer is 'being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct.'
 
 
 [2]
 The order was appealed. In Singer v. Hara, 11 Wash.App. 247, 522 P.2d 1187 (1974), the Court of Appeals of Washington affirmed the Superior Court and held that the Washington statutory prohibition against same-sex marriages did not violate any constitutional right. A petition for review was denied by the Supreme Court of Washington
 
 
 [3]
 The reasons for the Commission's conclusion were set forth in the letter as follows:
 'The information developed by the investigation, taken with your reply, indicate that you have flaunted and broadcast your homosexual activities and have sought and obtained publicity in various media in pursuit of this goal. . . . Your activities in these matters are those of an advocate for a socially
 '. . . In determining that your employment will not promote the efficiency of the service, the Commission has considered such pertinent factors as the potential disruption of service efficiency because of the possible revulsion of other employees to homosexual conduct and/or their apprehension of homosexual advances and solicitations; the hazard that the prestige and authority of a Government position will be used to foster homosexual activity, particularly among youth; the possible use of Government funds and authority in furtherance of conduct offensive to the mores and law of our society; and the possible embarrassment to, and loss of public confidence in, your agency and the Federal civil service.'
 
 
 [4]
 In an evaluation report, Singer had been rated by his supervisor as 'superior' or 'very good' in various categories of job performance. A letter from his co-workers expressed the opinion that Singer had been a competent employee and that their experience with him had been 'educational and positive'
 
 
 [5]
 See, also, Seebach v. Cullen, 338 F.2d 663 (9 Cir. 1964), cert. denied, 380 U.S. 972, 85 S.Ct. 1331, 14 L.Ed.2d 268 (1965); Frommhagen v. Klein, 456 F.2d 1391, 1393 (9 Cir. 1972)
 
 
 [6]
 Judge Leventhal noted further:
 'As Government services multiply, the liberties of Government employees come to be the liberties of an increasing and substantial portion of the citizenry, and are accordingly given increased recognition. There is a reverse side to the coin: With mounting provision of increased and increasingly indispensable services rendered by Government employees, the public weal demands administration that is effective and disciplined, and not beset by turmoil and anarchy.'
 
 
 [7]
 See, Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Jenkins v. U.S. Post Office, 475 F.2d 1256 (9 Cir. 1973). It is clear also that a probationary employee has 'fewer procedural rights than permanent employees in the competitive service'. Sampson v. Murray, 415 U.S. 61, 81, 94 S.Ct. 937, 948, 39 L.Ed.2d 166 (1974)
 
 
 [8]
 In his affidavit Singer stated, however, that he had not specifically authorized some of the newspaper publicity
 
 
 [9]
 In a footnote the court noted that there was 'no evidence that (Norton) was ever engaged in any offensive conduct in public. His private conduct came to light only through police investigation tactics of at least questionable legality.' 417 F.2d at 1167, n. 27
 
 
 [10]
 In Gayer the court considered three cases in which the district court had set aside the revocation of security clearance for homosexuals. Appellant relies upon two of those cases, Wentworth v. Laird, D.C., 348 F.Supp. 1153 (1972) and Gayer v. Laird, D.C., 332 F.Supp. 169 (1971). While the Court of Appeals affirmed the district court, it did so on the ground that in Wentworth the Hearing Examiner and Appeals Board had relied on answers to questions which were in violation of an executive order and thus impermissible, and in the second case the scope of examination was excessive. The orders were affirmed without prejudice to further proceedings by the Government consistent with the court's opinion. The third case (Gayer) was remanded to the administrative level to afford the employee an opportunity to respond to questions held proper, suspension to be sustained in case of his failure to answer the questions
 
 
 [11]
 The court also considered the effect of prior decisions of the D.C. Circuit Court in Adams v. Laird, 136 U.S.App.D.C. 388, 420 F.2d 230 (1969), cert. denied, 397 U.S. 1039, 90 S.Ct. 1360, 25 L.Ed.2d 650 (1970); Dew v. Halaby, 115 U.S.App.D.C. 171, 317 F.2d 582 (1973), petition for cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 550 (1964); and Scott v. Macy, 131 U.S.App.D.C. 93, 402 F.2d 644 (1968), both majority and dissenting opinions
 
 
 [12]
 The manual read in pertinent part:
 'Homosexuality and Sexual Perversion--
 Persons about whom there is evidence that they have engaged in or solicited others to engage in homosexual or sexually perverted acts with them, without evidence of rehabilitation, are not suitable for Federal employment.'
 
 
 [13]
 Notice of appeal was given, but the appeal was later dismissed on motion of the Civil Service Commission
 
 
 [14]
 The bulletin called attention to the opinion in Hampton, noting that it was a class action and applicable to all federal employees. The Commission, therefore, instructed those 'engaged in suitability evaluation' as follows:
 'Accordingly, you may not find a person unsuitable for Federal employment merely because that person is a homosexual or has engaged in homosexual acts, nor may such exclusion be based on a conclusion that a homosexual person might bring the public service into public contempt. You are, however, permitted to dismiss a person or find him or her unsuitable for Federal employment where the evidence establishes that such person's homosexual conduct affects job fitness--excluding from such consideration, however, unsubstantiated conclusions concerning possible embarrassment to the Federal service.'
 
 
 [15]
 5 C.F.R. Part 73, relating to Suitability Disqualification, was substantially amended. In the provision listing reasons for disqualification, the word 'immoral' was deleted, Section 731.202(b), as amended reading in part: '(2) Criminal, dishonest, infamous or notoriously disgraceful conduct'. The 'Suitability Guidelines for Federal Employment' was revised to conform to the new regulations. The amended guidelines for determining 'Infamous or Notoriously Disgraceful Conduct' reads in part:
 'Individual sexual conduct will be considered under the guides discussed above. Court decisions require that persons not be disqualified from Federal employment solely on the basis of homosexual conduct. The Commission and agencies have been enjoined not to find a person unsuitable for Federal employment solely because that person is homosexual or has engaged in homosexual acts. Based upon these court decisions and outstanding injunction, while a person may not be found unsuitable based on unsubstantiated conclusions concerning possible embarrassment to the Federal service, a person may be dismissed or found unsuitable for Federal employment where the evidence establishes that such person's sexual conduct affects job fitness.'
 
 
 [16]
 We do not imply that the amended regulations and guidelines would require a different result under the facts of this case
 
 
 [17]
 Citing, inter alia, NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)