**William Keith HOPKINS and Kenneth M. Lewis, Plaintiffs,**

v.

**Billy J. DOLINGER, Defendant.**

**Civ. A. No. 78–0040–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

June 23, 1978.

2. Both will result in the cancellation of Defendant's local registration.

James P. Jones, Penn, Stuart, Eskridge & Jones, Bristol, Va., for plaintiffs.

Stuart B. Campbell, Wytheville, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

GLEN M. WILLIAMS, District Judge.

This action was brought pursuant to the provisions of 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983. Plaintiffs allege that defendant's discharge of them as Deputies of Smyth County, Virginia violated their constitutional rights. They specifically contend that their discharges were motivated by a desire to penalize them for their exercise of their right to freedom of speech under the First Amendment and that they were deprived of their liberty and property rights under the Fourteenth Amendment without due process. The case is presently pending on motions for summary judgment filed by plaintiffs and defendant.

### Statement of Uncontested Facts

On August 3, 1977, defendant Dolinger, while serving as Sheriff of Smyth County, Virginia, was indicted by a Grand Jury in the Circuit Court of Smyth County. At the time of the indictment, both plaintiffs were serving as Deputies of Smyth County and had been employed by defendant.

Subsequent to the indictment of defendant, plaintiff Lewis, while in uniform and using an official car, circulated a petition among the citizenry of Smyth County. This petition sought the removal of defendant from office and stated in part as follows: "Billy J. Dolinger did steal from the Forest Service of the United States of America sums of money in excess of One Hundred Dollars ($100.00) while serving as Sheriff of Smyth County." The petition further stated that defendant "did make a false, fraudulent and misleading statement in reporting his campaign contributions. . . ." Lewis also admitted in a sworn deposition that he had told people in Smyth County that defendant was guilty and greedy.

During the same time period, plaintiff Hopkins, by his own admission under oath, expressed his opinion to people in Smyth County that defendant was guilty of stealing. He made such statements while in and out of uniform and while on and off duty.

Thereafter, defendant was tried by a jury and acquitted on some charges, and the remaining charges were dismissed. The petition seeking his removal was likewise dismissed by the Circuit Court of Smyth County, and defendant was reinstated as Sheriff on January 30, 1978.

Upon defendant's return to office, he interviewed each plaintiff separately and asked him whether he had circulated the petition seeking his removal and whether he had made statements against him in public. Each plaintiff answered with a "no comment." Defendant then asked them to resign. Upon their refusal, defendant fired plaintiffs because, in defendant's words, their "accusing me of stealing was wrong, talking about me was wrong," and because "the department was split at the time this investigation was going on and still split when I come [sic] back."

### First Amendment Rights

It is undisputed that plaintiffs were fired because they expressed their opinions that defendant was guilty of certain charges of larceny and perjury and because plaintiff Lewis circulated a petition which sought defendant's removal from office. The issue before the court is whether plaintiffs' activities were protected under the First Amendment. If so, then their discharges were premised on constitutionally impermissible grounds.

The parameters defining protected speech for state employees were outlined by the Supreme Court in *Pickering v. Board of Education of Township High School District 205, Will County*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The Court stated that "[t]he problem . . . is to arrive at a balance between the interests of [plaintiffs], as . . . [citizens], in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568, 88 S.Ct. at 1735. While the Court did not attempt to lay down a general standard for judging all statements, it did, however, examine some specific factors in deciding that the statements in *Pickering* were protected:

(1) the statements were not directed toward any person with whom the appellant had a daily working relationship so that no questions of discipline or harmony were presented;

(2) the statements touched matters of public importance; and

(3) the statements, while somewhat erroneous, were not made with knowing or reckless disregard of their falsity.

Applying these factors to the instant action, the court finds that plaintiffs were voicing their opinions about a matter of public importance. However, unlike *Pickering*, plaintiffs' activities were directed against their immediate superior. It is clear from the record that defendant was plaintiffs' supervisor with whom they had daily contact in performing their duties as Deputies. Plaintiff Hopkins stated under oath that his chief duties were serving papers and that the Sheriff directed him in doing such. Plaintiff Lewis likewise indicated that he sometimes received his instructions directly from defendant.

Despite this close working relationship, plaintiffs contend that under the First Amendment they can publicly[1] accuse their superior of criminal conduct and circulate a petition stating that he is guilty, and yet at the same time keep their jobs. The Supreme Court in *Arnett v. Kennedy*, 416 U.S. 134, 161, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), recognized the fallacy of such an argument in citing with approval the language of Judge Leventhal in *Meehan v. Macy*, 129 U.S.App.D.C. 217, 230, 392 F.2d 822, 835 (1968), *modified*, 138 U.S.App.D.C. 38, 425 F.2d 469, *aff'd en banc*, 138 U.S.App.D.C. 41, 425 F.2d 472 (1969):

> We think it is inherent in the employment relationship as a matter of common sense if not common law that an employee . . . cannot reasonably assert a right to keep his job while at the same time he inveighs against his superiors in public with intemperate and defamatory [remarks].

Defendant testified that there had been a split in his department and that his firing plaintiffs was an attempt to get his department straightened out after the charges against him were dismissed. Obviously, defendant felt that plaintiffs' continued employment as Deputies would create disharmony and inefficiency within the Sheriff's Department.

Harmony within a government agency and effective operation thereof are legitimate factors to consider when balancing the interests of plaintiffs and defendant. Contrary to plaintiffs' assertions, the decision of the Supreme Court in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), did not abolish such considerations. In *Elrod*, the Court discussed at great length the need to insure effective government and the efficiency of public employees, while holding that the wholesale patronage dismissals which occurred in *Elrod* were not "the least restrictive means for fostering that end." *Id.* at 372, 96 S.Ct. at 2689. In no way did the Court suggest that such goals were not appropriate considerations in judging the legitimacy of First Amendment restrictions.

1. The court expresses no opinion about whether plaintiffs' statements would have been protected under the First Amendment if they had been made to appropriate law enforcement officers.

In a recent case, this court held that a policeman's conversation with a television reporter about an ongoing investigation was not constitutionally protected because of the detrimental effect on the efficiency of the police department. *Ely v. Honaker*, 450 F.Supp. 16 (W.D.Va. 1977). The court is of the opinion that the First Amendment activities in the present case have more potential for causing disruption within the Sheriff's Department than those in *Ely*. This conclusion is based on the fact that *Ely* did not involve statements about the guilt of an immediate superior.

The court considers it unnecessary to determine in this case whether the public statements by the plaintiffs were true or false, or whether plaintiffs believed them to be true, nor does it matter that the charges against the Sheriff were eventually dismissed. Plaintiffs made these statements about their superior at a time when defendant was presumed to be innocent and when he was entitled to a fair trial in the county where he lived and worked. Viewed in this context, plaintiffs' statements were recklessly made and highly prejudicial.

A deputy in uniform and driving throughout the county in an official car carries with him the public trust. When he criticizes his superior, the Sheriff, his statements are more likely to destroy the public's confidence in law enforcement than when the same statements are made by ordinary citizens. If other deputies speak out in support of their superior, then an atmosphere of disharmony and tension among co-workers is created. The public's trust in the effectiveness of its law enforcement agency is thus further eroded.

An additional factor here that makes this case more egregious as to plaintiff Lewis is that the petition that was circulated wrongfully stated in part that defendant was guilty of certain crimes. A correct description of the circumstances would have been that defendant was accused of criminal conduct. The damaging effect of saying that a

person is guilty of a crime is significantly greater than the effect of saying that he is charged with a crime. This principle is equally applicable to the public statements made by plaintiffs.

■ As recognized by the Court in *Meehan, supra*, at 833, "a free society values robust, vigorous and essentially uninhibited public speech by citizens, [but] when such uninhibited public speech by Government employees produces intolerable disharmony, inefficiency, dissension and even chaos, it may be subject to reasonable limitations . . . ." After balancing plaintiffs' First Amendment interests with the interests of defendant in maintaining an efficient and harmonious Sheriff's Department, the court finds that the balance favors defendant. Therefore, plaintiffs' activities were not protected under the First Amendment.[2]

### Liberty Rights

Plaintiffs allege that their discharges deprived them of their liberty interests without due process. To support this allegation, they contend that defendant disseminated false and defamatory statements in connection with the firings thus stigmatizing plaintiffs and foreclosing other employment opportunities.

■ Plaintiffs have legitimate liberty interests "[o]nly if [defendant] create[d] and disseminate[d] a false and defamatory impression about [them] in connection with [their] termination." *Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The depositions of all the parties reveal that defendant orally communicated to plaintiffs that they were fired and that he did not provide any written reasons for his decision. There is no evidence that defendant disseminated the fact of the firings or any information about them to anyone

---

**2.** For other cases finding speech not protected, see, *Sprague v. Fitzpatrick*, 546 F.2d 560 (3rd Cir. 1976); *Singer v. United States Civil Service Commission*, 530 F.2d 247 (9th Cir. 1976); *Roseman v. Indiana University of Pennsylvania, at Indiana*, 520 F.2d 1364 (3rd Cir. 1975).

but plaintiffs. It is even more evident that no false or defamatory information was released. Therefore, plaintiffs' allegations that their liberty interests were violated without due process are without merit as a matter of law.

### Property Rights

For plaintiffs to have had property interests in their positions as Deputies, they must have had sufficient expectations of continued employment. *See Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Under Va. Code § 15.-1-48 (1976 Cum.Supp.), a deputy is under the control and supervision of the Sheriff and "may be removed from office by his principal." Plaintiffs served at the will of defendant and were subject to discharge at any time. Therefore they had no property interests in their positions as Deputies and were not entitled to any due process rights. *Roth, supra.*

### Conclusion

Having determined that plaintiffs' discharges did not violate their constitutional rights as a matter of law, defendant's motion for summary judgment is granted. It is hereby ordered that summary judgment be entered for defendant and that this case be stricken from the docket.