Harold David HUTTO, Plaintiff,

v.

Gary WATERS, etc., et al., Defendants.

Civ. A. No. 82–374–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 18, 1982.

David B. Schultz, Robert M. White, White & Selkin, Norfolk, Va., for plaintiff.

Stuart E. Katz, Asst. City Atty., City of Portsmouth, Portsmouth, Va., for defendants.

## MEMORANDUM ORDER

DOUMAR, District Judge.

This matter is before the Court on the defendants' motion to dismiss, pursuant to Rule 12(b)(6) and Rules 56(b) and (c) of the Federal Rules of Civil Procedure. The plaintiff, Mr. Hutto, opposes the defendants' motion to dismiss and has filed a brief in response thereto. Both the plaintiff and the defendants have filed documents and affidavits in support of their respective positions. Since the Court has not excluded the documents and affidavits presented to it outside of the pleadings, the Court treats the defendants' motion as a motion for summary judgment under Rule 56, as required by the provisions of Rule 12(b)(6). Rule 56(c) states that this Court may grant summary judgment only if the pleadings and other matters on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The plaintiff, a former Deputy Sheriff for the City of Portsmouth, brought this action pursuant to the provisions of 42 U.S.C. § 1983.[1] Jurisdiction is conferred on this Court under 28 U.S.C. § 1343. The plaintiff contends that his dismissal from employment as a Deputy Sheriff by defendant Sheriff Waters violated his constitutional rights. Specifically, the plaintiff alleges that the acts of Sheriff Waters and of the co-defendants relative to the suspension and to the ultimate dismissal from employment of plaintiff Hutto, did not comport with the suspension and termination policies, rules and regulations then in effect for the Portsmouth Sheriff's Department. The plaintiff contends that the alleged failure of the defendants to follow those policies, rules and regulations—the promulgation of which plaintiff alleges created in him a certain expectancy of continued employment—deprived the plaintiff of a valuable property interest, under color of state law, in contravention of his rights under the Due Process Clause of the Fourteenth Amendment.[2]

The issue the Court must decide is narrow, *viz.,* whether the plaintiff's employment as a Deputy Sheriff was a property interest protected by the Due Process Clause of the Fourteenth Amendment. Because the issue before the Court is a matter of law, not depending for its resolution on any material facts which are in dispute, summary judgment is an appropriate method for the disposition of this matter, and, for the reasons set forth in this order, will be entered in favor of the defendants.

### I.

Based on the pleadings, affidavits and documents submitted by the parties, the uncontested facts of this case are set out below.

The plaintiff, Mr. Hutto, had been employed as a Deputy Sheriff by the Portsmouth Sheriff's Department since September of 1976. In a memorandum to Sheriff Waters dated March 4, 1982 [hereinafter "the memorandum"], Mr. Hutto acknowledged that while on duty in the lobby on March 3, 1982, he picked up a Playboy Magazine that was addressed to an unnamed

---

1. 42 U.S.C. § 1983 provides:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

2. The amendment provides in pertinent part, "[N]or shall any State deprive any person of life, liberty or property, without due process of law ...." U.S. Const., Amdt. 14.

guest of the establishment Sheriff Waters manages for the City of Portsmouth, a guest who apparently was enjoying a repose of sufficient length to allow his mail to be forwarded thereto. The magazine, its contents discreetly concealed by the publisher's mailing wrapper, was then opened by the plaintiff, Mr. Hutto, who, according to the memorandum, consigned the wrapper to the trash and "looked at the cartoons" and "read a couple of jokes . . . and that was it". While traversing the pages of the magazine, like Lot traversing the plains of Sodom, Mr. Hutto apparently did not "turn back" to enjoy the scenery from which he had proceeded, but instead placed the magazine in a desk drawer, from which it later was retrieved by a less perfidious soul.[3]

On March 4, 1982, at defendant Waters' direction, defendant John Meagher, a Captain and the Internal Affairs Officer of the Portsmouth Sheriff's Department, began an investigation into allegations that the plaintiff had tampered with the mail of the unnamed inmate referred to above. Defendant Meagher interviewed the plaintiff in this regard on the same day and gave Mr. Hutto an opportunity to explain or to defend his actions. Showing contrition for his actions, if not for his taste in literature, the plaintiff executed, signed and dated the memorandum to Sheriff Waters. The memorandum bears the countersignature of same date of defendant Meagher. Defendant Meagher then advised the plaintiff that he was suspended with pay pending a determination by the Sheriff as to the plaintiff's status. Defendant Meagher reported these facts to defendant Sheriff Waters, with a finding that the plaintiff had violated 18

U.S.C. § 1702 by obstructing the delivery of correspondence to an inmate.[4]

At the further instruction of defendant Sheriff Waters, defendant Thomas Wootten, a Lt. Colonel and the Chief Deputy Sheriff of the Portsmouth Sheriff's Department, was dispatched to meet with the plaintiff on March 5, 1982. At that time, defendant Wootten gave the plaintiff an opportunity to explain his actions with regard to the magazine. Defendant Wootten then told the plaintiff that he would recommend to the Sheriff that the plaintiff be terminated for violating federal law and for depriving an inmate of prompt access to the inmate's mail. Defendant Wootten further advised the plaintiff that he could appeal the recommendation, to the Sheriff, within five days.

On March 8, 1982, the plaintiff met with defendant Sheriff Waters. At that time, according to the plaintiff's complaint filed herein, "the plaintiff was terminated for conduct reflecting poorly on the Sheriff's Department and for violating policy and procedures regarding inmates' rights."[5]

Finally, it is clear from the affidavits and from the pleadings that the plaintiff never received: (1) written notice confirming the nature or cause of his suspension of March 4, 1982; (2) a hearing before a Disciplinary Board prior to his dismissal from employment; and (3) a hearing before a grievance panel subsequent to his termination. These three above-enumerated items are the operative facts, as embodied in the policies, rules and regulations of the Portsmouth Sheriff's Department, which the plaintiff alleges were applicable to him at the time

---

3. In so doing, Mr. Hutto exhibited remarkable restraint in the face of what must have been substantial temptation. The Court would note, however, that Mr. Hutto's self-control might better have been exercised prior to his divertissement. In any event, the Court hopes Mr. Hutto found some solace in the pages of *Playboy,* for little, if any, awaits as he peruses the pages of this Order.

4. 18 U.S.C. § 1702 provides that:
"[W]hoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any

letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both."

5. Complaint at 3.

of his dismissal and which gave rise to his expectancy in continued employment.[6]

## II.

█ The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth*, 408 U.S. 564, 569–570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The plaintiff makes no claim that his dismissal from employment implicates any of his protected Fourteenth Amendment liberty interests. The Court, therefore, turns its attention to the question of whether the plaintiff had a property interest in his continued employment as a Deputy Sheriff in the Portsmouth Sheriff's Department. The Court is of the opinion he did not.

█ The range of interests protected by the Due Process Clause of the Fourteenth Amendment is not infinite. Only those interests that a person already has acquired in specific benefits are protected. *Id.* at 576, 92 S.Ct. at 2708. In order to have a property interest in a benefit, therefore, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. *Id.* at 577, 92 S.Ct. at 2709.

█ Claims of entitlement, and hence property interests, arise from many sources. State statutes, local ordinances, employment contracts, and the like, which secure certain benefits, may be sufficient to support claims of entitlement to those benefits. *Bunting v. City of Columbia*, 639 F.2d 1090 (4th Cir.1981), *citing Board of Regents v. Roth, supra* at 577, 92 S.Ct. at 2709. The person who asserts the claim of entitlement, however, bears the burden of establishing from what source the entitlement arises.

█ In the instant case, Mr. Hutto relies on various policies, procedures and regula-

tions promulgated by the Portsmouth Sheriff's Department, and allegedly made applicable to him, as the source of his entitlement to continued employment in the Portsmouth Sheriff's Department. The sufficiency of this claim to entitlement must be decided by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Bunting v. City of Columbia, supra* at 1093.

█ Under Virginia law, a deputy is under the control and supervision of the sheriff and "[A]ny such deputy may be removed from office by his principal." Va.Code § 15.1–48 (1973 Cum.Supp.). The Courts uniformly have interpreted this provision to mean that deputy sheriffs serve at the will of their sheriffs, and that they are subject to discharge at any time. *Hopkins v. Dolinger*, 453 F.Supp. 59, 63 (1978); *Baker v. Davis*, Civ. Action No. 80–927–N (E.D.Va. June 4, 1981) (opinion of Judge MacKenzie). Deputy sheriffs (like the plaintiff Mr. Hutto), therefore have no property interest in their positions as deputies and are not entitled to any due process rights as a result of state law. *Id., citing Hopkins v. Dolinger, supra;* see *Board of Regents v. Roth, supra; Bishop v. Wood, supra.*

█ Although the plaintiff does not rely solely on state law to support his claim, nothing in the policies, rules or regulations of the Portsmouth Sheriff's Department can be read as an entitlement to continued employment, and hence a property interest within the meaning of the Fourteenth Amendment, in the job of deputy sheriff. The Court, therefore, need not reach the issue of whether the policies, regulations and procedures plaintiff relies upon even are applicable to the plaintiff, since the Court holds as a matter of law that such policies, rules and regulations are insufficient to negate the fact that a deputy sheriff holds his position at the will of the sheriff and can be dismissed without any constitutionally mandated procedural pro-

---

**6.** The Policy and Procedure Guidelines, and the Standard Operating and Procedure Policies Manual from which plaintiff asserts his entitle-

ment to the three above-enumerated procedures, are contained in the Court's file of this case.

tections.[7] *See Bunting v. City of Columbia, supra,* at 1094.

In this situation, Mr. Hutto may have had an abstract concern in his employment, but he did not have a *property* interest sufficient to require the defendants to give him notice and a hearing, or any other procedural rights, when they terminated the plaintiff's employment. *Board of Regents v. Roth, supra,* 408 U.S. at 578, 92 S.Ct. at 2709. The Court would note, as did the Supreme Court in *Roth,* that its analysis of the plaintiff's constitutional rights in this case in no way indicates a view that an opportunity for a hearing or a statement of reasons for dismissal would, or would not, be appropriate or wise in Virginia sheriffs' departments.[8]

Having determined that the termination of the plaintiff's employment did not violate his constitutional rights as a matter of law, the motion of the defendants for summary judgment is GRANTED.

Accordingly, it is ORDERED that summary judgment be entered in favor of the defendants and the action be DISMISSED.

IT IS SO ORDERED.

**7.** Notwithstanding that, as a matter of law, the plaintiff had no Fourteenth Amendment procedural due process rights, the pleadings and affidavits in support of the motion to dismiss show uncontrovertibly that the plaintiff received a modicum of due process protection. He was given oral notice of the charge against him, an opportunity to explain his actions, and an opportunity to appeal to the Sheriff the recommendation of Col. Wootten that the plaintiff's employment be terminated. Had any procedures been required by the Fourteenth Amendment, these arguably would have sufficed. *See Board of Regents v. Roth, supra,* at 570–571, 92 S.Ct. at 2705.

**8.** Although the Court has determined that Mr. Hutto had no Fourteenth Amendment property interest in his continued employment sufficient to sustain his claim under 42 U.S.C. § 1983, none of the contractual remedies Mr. Hutto may have available to him under state law are implicated by the Court's analysis. The Court holds only that, in this instance, the Constitution does not mandate any procedural protections, and that Mr. Hutto, therefore, has not been deprived of any of his Fourteenth Amendment rights under color of state law.